**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

| | |
|---|---|
| **TYE DAVIS**, an individual,<br><br>Plaintiff,<br><br>v.<br><br>**PIZZAZZ INTERIORS II, LLC**, a Florida limited liability company, and **EMILIO SADEZ**, an individual,<br><br>Defendants. | CIVIL ACTION<br><br>Case No. 2:19-cv-875<br><br>Judge:<br><br>Mag. Judge: |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**NOW COMES** the Plaintiff, **TYE DAVIS** ("**DAVIS**" or "Plaintiff"), by and through undersigned counsel, and states the following for her Complaint:

**CAUSES OF ACTION**

1. This is an action brought under the federal Fair Labor Standards Act ("FLSA") and common law for (1) unpaid wages and overtime, and (2) breach of contract.

**PARTIES**

2. The Plaintiff, **TYE DAVIS** ("**DAVIS**") is an individual and a resident of Florida who at all material times resided in Lee County, Florida and worked for the Defendants in Collier County, Florida. At all material times, **DAVIS** was employed by the Defendants as a sales associate but was misclassified as an independent contractor. **DAVIS**'s primary job duties consisted of non-management work as an employee and included "[p]rovid[ing] exceptional customer service," support the Defendants' "team," contacting homeowners, assist in the design process, visit sales centers, participate in marketing events on behalf of Defendants, assist

1

designers in making sales, processing billing, processing payments, answering phones, printing documents and reports, data entry, and providing general administrative support for the Defendants, including **SADEZ**. The Defendants referred to **DAVIS** in employment documents as an "employee." Her job description specifically called for her to report to **SADEZ**. A great number of the customers **DAVIS** served were residents of other states who visit Southwest Florida on only a seasonal basis or on vacation. **DAVIS** began the flow of interstate commerce for by, *inter alia*, generating and processing billing, which collected funds from out-of-state sources. **DAVIS** performed work in Collier County, Florida, which is within the Middle District of Florida, during the events giving rise to this case. **DAVIS** was an employee within the contemplation of 29 U.S.C. 203(e)(1). Thus, pursuant to 28 U.S.C. 1391(b), venue for this action lies in the Middle District of Florida.

3.    The Defendant, **PIZZAZZ INTERIORS II, LLC** ("**PIZZAZZ**") is a Florida limited liability corporation and has a principal place of business located at 6001 Taylor Road, Naples, Florida 34109. **PIZZAZZ** has gross annual income well in excess of $500,000.00 per year and is engaged in interstate commerce; it is a covered employer under the FLSA (29 U.S.C. §203(d), (r) and (s)). **PIZZAZZ**'s employees are engaged in interstate commerce and their business model specifically involves interstate purchases and handling goods such as furniture that are from out-of-state suppliers. **PIZZAZZ** collects monies, most of which is from out-of-state financial institutions. **PIZZAZZ** has the authority to hire, fire, assign work, withhold work and affect the terms and conditions of persons like **DAVIS**. **PIZZAZZ** supervised and controlled **DAVIS** work schedules and conditions of employment, in addition to determining the rate and method of payment for **DAVIS**. **PIZZAZZ** maintains employment records of **DAVIS**. **PIZZAZZ** was the employer of **DAVIS**.

4. The Defendant, **EMILIO SADEZ** ("**SADEZ**") is an individual and is a covered employer under the FLSA (29 U.S.C. §203(d), (r) and (s)). **SADEZ** had the authority to hire, fire, assign work, withhold work and affect the terms and conditions of persons like **DAVIS**. **SADEZ** supervised and controlled **DAVIS**'s work schedules and conditions of employment, in addition to determining the rate and method of payment for **DAVIS**. **SADEZ** maintains employment records of **DAVIS**. **SADEZ** was the employer of **DAVIS**.[1]

## JURISDICTION AND VENUE

5. This Court has jurisdiction of this matter under 28 U.S.C. §1331, 1343(4), 2201 and 2202 and pursuant to the Fair Labor Standards Act (FLSA") 29 U.S.C. §§216(b) and 217. The jurisdiction of this Court is invoked to secure the protection and redress of the deprivation of rights secured by the FLSA.

6. This Court has supplemental jurisdiction over **DAVIS**'s state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in the United States District Court for the Middle District of Florida because the Plaintiff worked in, and the Defendants conduct business in, and some or all of the events giving rise to Plaintiff's claims occurred in Collier County, Florida, which is within the Middle District of Florida. Venue is proper in the Fort Myers Division under Local Rule 1.02(b)(5) since the action accrued in Collier County, which is within the Fort Myers Division.

## GENERAL ALLEGATIONS

8. **DAVIS** began her employment with the Defendants in September 2013.

9. Defendant **PIZZAZZ** is an interior design company owned by Defendant **SADEZ**, that does business in Naples, Florida, as well as all of Southwest Florida.

---

[1] **PIZZAZZ** and **SADEZ** are referred to herein as "Defendants."

10. **DAVIS** was employed by the Defendant as sales associate but was misclassified by the Defendants as an independent contractor.

11. **DAVIS**'s direct supervisor was **SADEZ**, and **DAVIS**'s role of was non-management and did not include advising the Defendants regarding violations of state or federal wage/hour law.

12. **DAVIS**'s position required only a high school education or equivalent and an interior design license.

13. However, **DAVIS** was not exempt under the FLSA, but rather was an hourly employee, because the economic reality was that **DAVIS** was dependent on the Defendants.

14. The Defendants took an overly active role in directing, controlling and supervising **DAVIS**' work, including determining which designers would work on each project and determining the design to be utilized.

15. The Defendant had the power to hire or fire, modify the employment conditions, and determine the pay rates or methods of pay for workers like **DAVIS**, and the Defendants closely monitored her work and communicated orders directly to her. The Defendants did not provide merely general instructions but instead assigned **DAVIS** specific tasks and took an overly active role in the oversight of the work.

16. The Defendant employed **DAVIS** on a more than full-time basis from September 2013 to July 2019, a period of almost 6-years which demonstrates a degree of permanency and duration of the parties' relationship. During that time, **DAVIS** was not allowed to – and did not – have any outside employment.

17. Much of the work performed by **DAVIS** was unskilled work, and both the skilled and unskilled sales work she performed was an integral part of the Defendants' overall business.

18. The Defendants owned or controlled the premises where **DAVIS**' work occurred. In addition, **DAVIS** did not invest in equipment or materials required for completing her tasks, nor could she or did she hire other workers to assist her in the completion of her tasks.

19. The Defendant undertook responsibilities ordinarily performed by employers, such as developing a formal job description, controlling **DAVIS**'s working hours and workload, dictating her rate(s) and method of pay (including calculating the same as opposed to being presented a bill by workers like **DAVIS**), issuing her paychecks, requiring her to report to **SADEZ**, providing insurance coverage, and providing tools, equipment and materials required for the job.

20. **DAVIS** had no opportunity for profit or loss depending on her managerial skill, initiative, judgment or foresight because all job duties were dictated by the Defendants, who paid her an amount that could not be increased through managerial skill.

21. Furthermore, when **DAVIS** demanded commissions due to her, counsel for the Defendants issued a written response wherein **DAVIS** was referred to as an employee:

> As you are aware, your resignation was effective on July 18. **The policy and practice of the company is to pay commissions to individuals who are employees** when the customer payments are received, which is the trigger for when any commissions would be due. **If an employee is no longer employed at the time of the receipt of the customer payments, the company does not pay a commission to that employee.** Because your resignation was effective on July 18, you would therefore not be entitled to payments of commissions on receipts from customers after that date.

(Emphasis added).

22. **DAVIS** was required by the Defendants to work sixty (60) hours per week (and many more during the busy winter "season"), and did so without proper overtime compensation.

23. **DAVIS** was not FLSA-exempt but rather a non-exempt employee whom the Defendants required or permitted to work without overtime compensation in violation of the FLSA because **DAVIS** performed work for the benefit of the Defendants for which she was not

compensated. To the extent that such work is performed during a work week in which **DAVIS** has, or would have, worked in excess of forty (40) hours per week, such practice further violates the overtime pay provisions of the FLSA by virtue of the Defendants' failure to pay compensation at a rate of one and one-half (1 and 1/2) times **DAVIS**' regular rate of pay.

24. The Defendants' practice alleged *supra*, requires employees like **DAVIS** to perform work for the benefit of the Defendants for which the employees are not compensated and thus the Defendants have been unjustly enriched.

25. The Defendants misclassified **DAVIS** as FLSA-exempt and proper records of her hours worked would reflect uncompensated overtime.

26. The Defendants should have been paying **DAVIS** on an hourly, non-exempt rate during the entire course of her employment with the Defendants.

27. Notwithstanding the same, the Defendants still refused to properly compensate **DAVIS** on an hourly, non-exempt basis in compliance with the FLSA. The Defendants thus failed to act in good faith and did not have a reasonable belief it had complied with the FLSA.

28. At all relevant times, the Defendants' employment of **DAVIS** has been on a salary basis, which salary was designed to cover all hours worked up to forty (40) hours per week.

29. The Defendants have violated the FLSA by failing to pay overtime wages to **DAVIS**.

### COUNT I: VIOLATION OF THE FLSA- UNPAID OVERTIME

30. The Plaintiff hereby incorporates Paragraphs 1-29 in this Count as though fully set forth herein.

31. **DAVIS** was actually a covered, non-exempt employee under the FLSA at all times during her employment with the Defendants.

32. The Defendants were required by the FLSA to pay **DAVIS** at least time and one-half for all hours worked by **DAVIS** in excess of 40 hours per week.

33. The Defendants had operational control over all aspects of **DAVIS**'s day-to-day functions during her employment, including compensation.

34. The Defendants were **DAVIS**'s employer and are liable for violations of the FLSA in this case.

35. The Defendants violated the FLSA by failing to pay **DAVIS** at least time and one-half for all hours worked over 40 per week.

36. The Defendants have willfully violated the FLSA in refusing to pay **DAVIS** proper overtime for all hours worked over 40 per week.

37. As a result of the foregoing, **DAVIS** has suffered damages of lost wages.

38. The Defendants are the proximate cause of **DAVIS**'s damages.

**WHEREFORE,** the Plaintiff prays that this Honorable Court enter a Judgment in her favor and against the Defendants for an amount consistent with evidence, together with liquidated damages, the costs of litigation, interest, and reasonable attorneys' fees.

## COUNT II – BREACH OF CONTRACT

39. The Plaintiff realleges and incorporates Paragraphs 1-3 and 6-9 in this Count by reference.

40. A contract existed between **DAVIS** and Defendant **PIZZAZZ**.

41. The terms of the contract were, during **DAVIS**' employment, **PIZZAZZ** would pay **DAVIS**: 3% on full markup sales; 1.5% on reduced markup sales, and 25% of **PIZZAZZ** design fees.

42. Both **DAVIS** and Defendant **PIZZAZZ** agreed to those terms, which were clear and unambiguous.

43. **DAVIS** fully and satisfactorily performed her duties under the contract.

44. **PIZZAZZ** has breached the contract by refusing to pay **DAVIS** those sums due under the terms of the written contract on the following projects: Barkell, Kuzniar, Jeff and Sue Connelly, Danaher, Finley, Lacluse, Murphy, Piccirilli, Silverman, Thompson, White, Wolff, Thomas, and Rochan.

45. **DAVIS** has been damaged as a result of **PIZZAZZ**'s breach of the contract.

46. This Count is timely brought and all conditions precedent have occurred or been waived.

**WHEREFORE**, Plaintiff respectfully demands that this Honorable Court enter its judgment in favor of Plaintiff and against Defendant **PIZZAZZ** in an amount consistent with the evidence, together with the costs of this litigation, interest, reasonable attorney's fees pursuant to F.S. §448, and all other relief as this Court deems proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment to the United States, the Plaintiff demands a trial by jury as to all issues triable as of right.

Respectfully submitted,

Dated: December 11, 2019    **/s/ Benjamin H. Yormak**
Benjamin H. Yormak
Florida Bar Number 71272
Trial Counsel for Plaintiff
Yormak Employment & Disability Law
9990 Coconut Road
Bonita Springs, Florida 34135
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com